# United States Court of Appeals for the Federal Circuit

JOHNATHAN H. DINH, DWIGHT D. JERECZEK, SANDY CHUAN-DINH, DEBORAH JERECZEK, STAN ELLIOTT, RYAN TRAN, THANH NGA TRAN, WALTER NAHM, LAUREN NAHM, PAMELA PAYSON, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

– v. –

UNITED STATES,

*Defendant-Appellee.*

*On Appeal from the United States Court of Federal Claims in No. 1:22-cv-00725-EGB, Honorable Eric G. Bruggink, Senior Judge*

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

ROGER J. MARZULLA
NANCIE G. MARZULLA
MARZULLA LAW, LLC
1150 Connecticut Avenue, NW,
  Suite 1050
Washington, DC 20036
(202) 822-6760
roger@marzulla.com
nancie@marzulla.com

*Counsel for Plaintiffs-Appellants*

JANUARY 31, 2024

**Table of Contents**

Table of Authorities.................................................................................. ii

1. PROMESA Created and Authorized the Oversight Board to Take Dinh's Property .............................................................................................2

2. The Oversight Board Is Not an Independent Third Party but a Territorial Creature of Congress ...........................................................................8

3. PROMESA Does Not Merely Frustrate Dinh's Contract Rights ......................10

4. The Government Incorrectly Argues that No Case Supports a Per Se Taking in This Case .......................................................................................12

5. Even If a Multi-Factor Regulatory Taking Analysis Applies (Which it Does Not), COFINA Has Alleged a Compensable Taking.......................................18

   5.1 COFINA Bondholders Held a Reasonable, Investment-Backed Expectation That Their Bonds Would Be Repaid in Full .............................................19

   5.2 The Complaint Properly Alleges That PROMESA Caused Severe Economic Impact to the COFINA Bondholders.......................................21

   5.3 The Character of the Government's Action Is the Equivalent of a Physical Seizure........................................................................................22

6. The Trial Court Correctly Rejected the Government's Argument That the Court of Federal Claims Lacked Tucker Act Jurisdiction ..........................................24

Conclusion .........................................................................................28

# Table of Authorities

## CASES

*A & D Auto Sales, Inc. v. United States*,
748 F.3d 1142 (Fed. Cir. 2014). .........................................................................8

*Acceptance Ins. Companies Inc. v. United States*,
503 F.3d 1328 (Fed. Cir. 2007) ................................................... 26, 27

*Alimanestianu v. United States*,
124 Fed. Cl. 126 (2015) .......................................................................19

*Altair Glob. Credit Opportunities Fund (A), LLC v. United States*,
138 Fed. Cl. 742 (2018). ............................................................... 25, 26

*Altair Glob. Credit Opportunities Fund (A), LLC v. United States*,
151 Fed. Cl. 276 (2020). .......................................................................11

*Armstrong v. United States*,
364 U.S. 40 (1960). ...............................................................................16

*Aviation & Gen. Ins. Co., Ltd. v. United States*,
121 Fed. Cl. 357 (2015) ........................................................................18

*Blanchette v. Connecticut Gen. Ins. Corps.*,
419 U.S. 102 (1974) ..............................................................................26

*Brown v. Legal Found. of Washington*,
538 U.S. 216 (2003). .................................................... 14, 15, 22

*Cardiosom, L.L.C. v. United States*,
656 F.3d 1322 (Fed. Cir. 2011). ..........................................................27

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021) .......................................................................2, 7

*Cienega Gardens v. United States*,
331 F.3d 1319 (Fed. Cir. 2003) .............................................11, 19, 20

*Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*,
508 U.S. 602 (1993) ....................................................... 17, 18, 23

*Connolly v. Pension Ben. Guar. Corp.*,
475 U.S. 211 (1986) ....................................................... 17, 18, 23

*E. Enterprises v. Apfel*,
524 U.S. 498 (1998) ....................................................... 17, 18, 23

*Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*,
140 S. Ct. 1649 (2020) .......................................................................4, 9

*Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*,
  598 U.S. 339 (2023) ...............................................................5

*Fredericks v. United States*,
  125 Fed. Cl. 404 (2016). .......................................................19

*Hodel v. Irving*,
  481 U.S. 704 (1987). ....................................................... 13, 22

*Horne v. Dep't of Agric.*,
  576 U.S. 350 (2015) ...............................................................2

*In re City of Bridgeport*,
  129 B.R. 332 (Bankr. D. Conn. 1991)....................................5

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  361 F. Supp. 3d 203 (D.P.R. 2019)........................................6

*Jan's Helicopter Serv., Inc. v. F.A.A.*,
  525 F.3d 1299 (Fed. Cir. 2008) ...........................................25

*Kaiser Aetna v. United States*,
  444 U.S. 164 (1979) ........................................................ 22, 23

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005). ....................................................... 13, 28

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982) ........................................................ 14, 22

*Louisville Joint Stock Land Bank v. Radford*,
  295 U.S. 555 (1935). .............................................................23

*Lucas v. S.C. Coastal Council*,
  505 U.S. 1003 (1992) ...................................................... 12, 13

*Nollan v. California Coastal Comm'n*,
  483 U.S. 825 (1987) .............................................................22

*Omnia Com. Co. v. United States*,
  261 U.S. 502 (1923). ........................................................10, 11

*Penn Cent. Transp. Co. v. City of New York*,
  438 U.S. 104 (1978). .................... 7, 12, 17, 18, 19, 21, 22

*Phillips v. Washington Legal Found.*,
  524 U.S. 156 (1998). ....................................................... 14, 15

*Preseault v. I.C.C.*,
  494 U.S. 1 (1990) ..................................................... 6, 7, 26, 27

*Preseault v. United States*,
  100 F.3d 1525 (Fed. Cir. 1996) ............................................7

iii

*Puerto Rico v. Sanchez Valle*,
    579 U.S. 59 (2016) ...........................................................10
*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ................................... 13, 19, 26
*Tyler v. Hennepin Cnty., Minnesota*,
    598 U.S. 631 (2023). .................................... 13, 15
*United States v. Causby*,
    328 U.S. 256 (1946). .......................................26
*United States v. Testan*,
    424 U.S. 392 (1976) ................................... 25, 27
*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
    449 U.S. 155 (1980). .............................. 1, 14, 15, 24
*Whitney Benefits, Inc. v. United States*,
    752 F.2d 1554 (Fed. Cir. 1985). ...........................13
*Whitney Benefits, Inc. v. United States*,
    926 F.2d 1169 (Fed. Cir. 1991) ...........................13
*Yancey v. United States*,
    915 F.2d 1534 (Fed. Cir. 1990) ...........................21

## STATUTES

11 U.S.C. § 101(52) ...................................................... 3, 20
11 U.S.C. § 109 .........................................................3, 5
11 U.S.C. § 902 .........................................................3
11 U.S.C. § 928(a)........................................................4
28 U.S.C. § 1491(a)(1)....................................................24
48 U.S.C. § 2101 ........................................................16
48 U.S.C. § 2103.........................................................1
48 U.S.C. § 2121 ................................................... 1, 9, 10
48 U.S.C. § 2194........................................................5, 6
2013 Puerto Rico Laws Act 3 (H.B. 888) ..............................12
P.R. Laws Ann. tit. 13, § 11......................................... 15, 20
P.R. Laws Ann. tit. 13, § 12. ....................................... 15, 20
P.R. Laws Ann. tit. 13, § 13 ..................................... 15, 16, 20
P.R. Laws Ann. tit. 13, § 14 ...............................3, 11, 15, 20
P.R. Laws Ann. tit. 13, § 15. ....................................... 15, 20
P.R. Laws Ann. tit. 13, § 16. ....................................... 15, 20

# OTHER AUTHORITIES

COFINA Bond Resolution (June 10, 2009)...................................................... 15, 16

Puerto Rico Treasury, *State Sales and Use Tax Distribution of Monthly Collection Fiscal Years 2014–15 – 2015–16* ............................................................................3

Puerto Rico's Debt Crisis and its Impact on the Bond Markets: Hearing before the Subcomm. On Financial Services, 114 Cong. 75 (Feb. 25, 2016) (Statement of Sean Duffy) .........................................................................................................11

Puerto Rico's Debt Crisis and its Impact on the Bond Markets: Hearing before the Subcomm. On Financial Services, 114 Cong 75 (Feb. 25, 2016) (Statements of Bruce L. Poliquin and Carolyn B. Maloney) .......................................................8

# CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V........................................................................................ *passim*

As the Government admits, "[t]hrough PROMESA, Congress established a comprehensive scheme concerning all matters related to the Oversight Board; and, all matters related to the restructuring of Puerto Rico's debt."[1] Only by invoking the United States' power under the Supremacy Clause and Territory Clause under the Constitution[2] and its exclusive power to regulate federal territories and properties[3] could the Government appropriate the repayment rights of COFINA Bondholders and seize the more than $600 million held by COFINA to repay them.[4] The Government's argument that the United States is not liable for the Oversight Board's uncompensated taking of Dinh's property, just as Congress authorized it to do, is at odds with the established Fifth Amendment principle that "a State, by *ipse dixit*, may not transform private property into public property without compensation."[5]

The issue in this appeal is whether the Court of Federal Claims (CFC) erred as a matter of law in holding that Dinh's complaint did not adequately allege a

---

[1] Gov't Resp. Br. (December 21, 2023), ECF No. 29 at 24.

[2] PROMESA provides that "Congress enacts this chapter pursuant to article IV, section 3 of the Constitution of the United States, which provides Congress the power to dispose of and make all needful rules and regulations for territories." *See* 48 U.S.C. § 2121(b)(2).

[3] PROMESA provides that the Act "shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this chapter." *See* 48 U.S.C. § 2103.

[4] Under Act 91, the 2006 Puerto Rican statute creating COFINA, both the Fund and the bond obligations could not be changed by Puerto Rican law.

[5] *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).

compensable taking because Congress had not "commanded" or "coerced" the Oversight Board to take Dinh's property, and that Congress's authorization to restructure COFINA's debt, abrogate liens, and divert pledged revenues to the Puerto Rican Treasury did not rise to the level of an unconstitutional taking.[6] But the simple fact is that, but for the United States' enactment of PROMESA, Dinh's funds (property) would not and could not have been transferred to Puerto Rico because Puerto Rican law forbade the transfer. The trial court's dismissal for failure to state a claim under Rule 12(b)(6) should be reversed, and the Government's jurisdictional argument under Rule 12(b)(1) should be rejected, just as the trial court did.

Dinh further replies as follows:

## 1.     PROMESA Created and Authorized the Oversight Board to Take Dinh's Property

If PROMESA had simply required COFINA to transfer the $600 million in the Dedicated Fund to the Puerto Rico treasury and reduce the face value of COFINA's outstanding bonds, there would be no question that it had taken the property of Dinh and the other Bondholders. That Congress chose to achieve the same result by creating an Oversight Board and authorizing it to do the deed does

---

[6] *See, e.g.*, *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2076 (2021) ("Under the Constitution, property rights 'cannot be so easily manipulated.'") (quoting *Horne v. Dep't of Agric.*, 576 U.S. 350, 365 (2015)).

not change the result—Dinh's property has still been taken by federal action for the public purpose of addressing Puerto Rico's financial emergency.

Without PROMESA, the hundreds of millions of dollars in the Dedicated Sales Tax Fund could not be used for any purpose other than repayment to Dinh.[7] Neither the territory of Puerto Rico nor COFINA could file for bankruptcy to access this secured fund.[8] Under Puerto Rican law, Dinh's property interests in his COFINA bonds were inviolate. Act 91 flatly prohibited the Puerto Rican legislature from enacting any new law that would "undermine any obligation or commitment of COFINA."[9] In addition, Puerto Rico could not obtain any relief from their bond obligations under federal bankruptcy law or a failed attempt at a Puerto Rican equivalent.[10]

Even if Congress had authorized Puerto Rico to file under the federal Bankruptcy Act, the COFINA indenture gave the Bondholders a lien upon the sales tax revenue stream, and in a Chapter 9 municipal bankruptcy, that lien could not be removed: "The Federal Bankruptcy Code's municipality-related Chapter 9 did not

---

[7] P.R. Laws Ann. tit. 13 § 14.; *see also* Puerto Rico Treasury, *State Sales and Use Tax Distribution of Monthly Collection Fiscal Years 2014–15 – 2015–16*, https://hacienda.pr.gov/sites/default/files/Inversionistas/distribucion_mensual_ivu_junio_2015-16_sheet1.pdf (last visited Jan. 29, 2024).
[8] *See* 11 U.S.C. § 902; *see* 11 U.S.C. § 101(52).
[9] P.R. Laws Ann. tit. 13 § 14.
[10] *See* 11 U.S.C. § 109(c).

apply to Puerto Rico. . . . [F]ederal bankruptcy law invalidated Puerto Rico's own local debt-restructuring statutes."[11]

Ordinarily, under Chapter 9 of the Bankruptcy Code, which governs municipal bankruptcies, such liens are treated as "special revenues" that *cannot* be stripped from the bonds: "[S]pecial revenues acquired by the debtor after the commencement of the case shall remain subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."[12] But contrary to the Government's argument, PROMESA does not incorporate this same protection for special revenue bonds; if it had, Bondholders' security interest in the $600 million held in COFINA's Sales and Use Tax Fund (and future sales tax revenues belonging to COFINA) could not have been seized to pay Puerto Rico's debts.

In addition, Bankruptcy Act protection applies only to insolvent entities and COFINA was entirely solvent, with $600 million held in trust to repay its bonds with interest as they became due and a constant stream of Sales and Use Tax

---

[11] *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1655 (2020) (internal quotations omitted).
[12] 11 U.S.C. § 928(a).

revenue.[13] COFINA could never have qualified for debt restructuring under the federal Bankruptcy Act.[14]

Without PROMESA, neither Puerto Rico nor COFINA had an available legal process to modify their existing obligations to repay Dinh in strict accordance with the provisions of their bond instruments.

By 2016, Puerto Rico faced a "fiscal emergency" under which its "public debt had soared" to "more than the annual output" of its economy.[15] Congress found that this problem could only be solved by creating "a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process,"[16] which could not be achieved "without congressional action to restore its financial accountability and stability."[17] PROMESA was enacted to:

1.   [P]rovide the Government of Puerto Rico with the resources and the tools it needs to address an immediate existing and imminent crisis;

* * *

---

[13] 11 U.S.C. § 109; Appx5; Appx75; Appx80.
[14] "An entity may be a debtor under chapter 9 of this title if and only if such entity . . . is insolvent[.]" 11 U.S.C. § 109(c)(3); *see also In re City of Bridgeport*, 129 B.R. 332, 334 (Bankr. D. Conn. 1991) (noting that 11 U.S.C. § 109 "provides that a municipality may be a chapter 9 debtor 'if and only if . . . [it] is insolvent'").
[15] *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 342 (2023) (Discussing Puerto Rico's financial situation and the passage of PROMESA).
[16] 48 U.S.C. § 2194(m)(4).
[17] 48 U.S.C. § 2194(m)(6).

3.      [P]rovide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring;

4.      [M]ake available a Federal restructuring authority, if necessary, to allow for an orderly adjustment of all of the Government of Puerto Rico's liabilities; and

5.      [B]enefit the lives of 3.5 million American citizens living in Puerto Rico by encouraging the Government of Puerto Rico to resolve its longstanding fiscal governance issues. . . . [18]

PROMESA addressed Puerto Rico's financial crisis by authorizing the restructuring plan that canceled COFINA Bondholders' existing bonds and required that new bonds with new terms be issued by the reorganized COFINA under the New Bond Legislation and the New Bond Indenture.[19] The PROMESA restructuring plan also required that a portion of the Dedicated Sales Tax Fund, as well as a significant portion of the ongoing Sales and Use Tax revenues pledged to secure the COFINA bonds, be transferred from COFINA (where it was held in trust) to the Puerto Rico Treasury—rendering those funds unavailable for payment to Dinh and COFINA Bondholders.[20]

The Government erroneously relies on the Supreme Court's decision in *Preseault v. Interstate Commerce Commission*,[21] to support its argument that Dinh

---

[18] 48 U.S.C. § 2194(n)(1)-(5).
[19] *See generally In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 361 F. Supp. 3d 203, 262–263 (D.P.R. 2019).
[20] *Id.* at 263.
[21] *Preseault v. I.C.C.*, 494 U.S. 1 (1990).

has not alleged a taking, but the *Preseault* court did not decide any taking issue: "We need not decide whether a taking occurred in this case."[22] Curiously, the Government fails to respond to our discussion of this Court's decision in *Preseault v. United States*,[23] holding that an agency action authorized (but not directed) by statute can be a taking—a decision not limited to real property. Nor does the Government respond to our discussion of *Cedar Point Nursery*,[24] holding that whenever a regulation results in a physical appropriation of property (real, personal or intangible), a per se taking has occurred and *Penn Central* has no place.

Contrary to the Government's contentions, Bondholders do not challenge the actions of the Oversight Board or the Title III Court. In passing PROMESA, Congress directly and intentionally authorized these actions, which achieved the intended result of ameliorating Puerto Rico's financial crisis by taking Bondholders' property rights in their bonds and the funds COFINA held in trust to repay them. Rather, Bondholders' claim is that in PROMESA, Congress authorized the uncompensated taking of Dinh's property by targeting COFINA bonds and special revenues that were protected from alteration under the laws of Puerto Rico and Chapter 9 of the Bankruptcy Code, given that COFINA remained solvent when PROMESA was passed.

---

[22] *Id.* at 17.
[23] *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996).
[24] *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021).

Congress's intention in passing PROMESA was explicit:

> It is also important to remember that much of Puerto Rico's $72 billion worth of debt is what is known as special revenue debt, which enjoys unique protections under Chapter 9. So even if [Puerto Rico] had Chapter 9, there would be a whole area that would be protected from restructuring. . . I think we have to consider a more comprehensive - option, like a broader restructuring regime, that can bring in all of the creditors to the table, including the secured creditors.[25]

Rather than appropriate funds to assist Puerto Rico in paying its existing debts, Congress chose to authorize the cancellation of much of the debt owed to Bondholders—without paying them—and take the funds set aside for repayment in the COFINA Dedicated Sales Tax Fund, as well as pledged Sales and Use Tax revenues, and transfer them to the Puerto Rico Treasury to be used for other purposes. PROMESA's passage constituted a legislative, per se taking of Dinh's property rights.

## 2. The Oversight Board Is Not an Independent Third Party but a Territorial Creature of Congress

The Government's heavy reliance on *A & D Auto Sales, Inc. v. United States*[26] fails because, unlike the Chrysler Corporation, the Oversight Board is not a third party to which congressional action is directed. In *A & D Auto*,[27] the Plaintiff

---

[25] Appx79–80 (quoting Puerto Rico's Debt Crisis and its Impact on the Bond Markets: Hearing before the Subcomm. On Financial Services, 114 Cong. 75 (Feb. 25, 2016) (Statements of Bruce L. Poliquin and Carolyn B. Maloney)).

[26] *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142 (Fed. Cir. 2014).

[27] *Id.*

8

auto dealers claimed that the Treasury Department coerced Chrysler Corporation into canceling their franchises as a condition of the federal loan to Chrysler. Unlike the Oversight Board, Chrysler acted independently, was not created by Congress, and Congress did not delegate any of its authority to Chrysler.

In contrast, the Puerto Rico Financial Oversight and Management Board is a creation of Congress[28] with the authority to "designate any territorial instrumentality as a covered territorial instrumentality that is subject to the requirements of" PROMESA.[29] PROMESA gives the Oversight Board broad authority over Puerto Rico's budget and its laws to achieve financial responsibility, and the standing to file for COFINA's debt restructuring:

> PROMESA gives the Board authority to file for bankruptcy on behalf of Puerto Rico or its instrumentalities. [Citation omitted.] The Board can supervise and modify Puerto Rico's laws (and budget) to "achieve fiscal responsibility and access to the capital markets." [Citation omitted] And it can gather evidence and conduct investigations in support of these efforts.[30]

Although PROMESA recites that the Oversight Board is an agency of Puerto Rico, this recital alone does not make the Oversight Board an independent third party similar to Chrysler. PROMESA was enacted using Congress' constitutional

---

[28] 48 U.S.C. § 2121.
[29] 48 U.S.C. § 2121(d)(1)(A).
[30] *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1655 (2020).

authority to make law for its properties and territories, which includes Puerto Rico.[31]

As to Puerto Rico,

> one power Congress does not have, just in the nature of things: It has no capacity, no magic wand or airbrush, to erase or otherwise rewrite its own foundational role in conferring political authority. Or otherwise said, the delegator cannot make itself any less so—no matter how much authority it opts to hand over.[32]

In short, as the Supreme Court stated, "because when we trace that authority all the way back, we arrive at the doorstep of the U.S. Capitol—the Commonwealth and the United States are not separate sovereigns"[33]—and the United States is not insulated from takings liabilities for the actions of the congressionally created Oversight Board authorized by PROMESA.

### 3.    PROMESA Does Not Merely Frustrate Dinh's Contract Rights

This case is entirely different from *Omnia*,[34] where the interference with a contract was merely an incidental or unintended result of the Government's wartime requisition of the entire output of a steel plant, leaving none to satisfy the plaintiff's steel purchase contract. As it applies to legislation like PROMESA,

---

[31] 48 U.S.C. § 2121 ("Congress enacts this chapter pursuant to article IV, section 3 of the Constitution of the United States, which provides Congress the power to dispose of and make all needful rules and regulations for territories.").

[32] *Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 77 (2016) (holding that, under the double jeopardy clause of the Constitution, the United States and Puerto Rico are not separate sovereigns).

[33] *Id.* at 78.

[34] *Omnia Com. Co. v. United States*, 261 U.S. 502 (1923).

"[t]he proposition in *Omnia* about consequential loss or injury refers to legislation targeted at some public benefit, which incidentally affects contract rights, not, as in this case, legislation aimed at the contract rights themselves in order to nullify them."[35]

Here, Congress explicitly targeted COFINA's bonds and funds to double the size of the PROMESA pie:

> [A]s Congress . . . we have the power to decide whether it is 30 percent, whether it is 100 percent, or whether it is 75 percent . . . [b]ut if COFINA is included, we are not at 30 percent. We are going to get up to 75 percent.[36]

And Congress intentionally placed the PROMESA burden on the bondholders, stating, "[t]his institution believes that we should have the [secured] bondholders bear that loss instead of the American taxpayer."[37]

The Government's reliance on the CFC's decision in *Altair*[38] is also misplaced. Whereas Act 91, the Puerto Rican statute authorizing COFINA bonds, prohibited the passage of any statute that would "undermine any obligation or commitment of COFINA[,]"[39] the bonds in *Altair* expressly provided that they

---

[35] *Cienega Gardens v. United States*, 331 F.3d 1319, 1335 (Fed. Cir. 2003).
[36] Puerto Rico's Debt Crisis and its Impact on the Bond Markets: Hearing before the Subcomm. On Financial Services, 114 Cong. 75 (Feb. 25, 2016) (Statement of Sean Duffy).
[37] *Id.*
[38] *Altair Glob. Credit Opportunities Fund (A), LLC v. United States*, 151 Fed. Cl. 276 (2020).
[39] P.R. Laws Ann. tit. 13 § 14.

were subject to changes in the law and that the entire retirement system would be restructured.[40]

## 4. The Government Incorrectly Argues that No Case Supports a Per Se Taking in This Case

The Government incorrectly argues that the categorical, per se taking test does not apply here, arguing that a per se test only applies in physical taking cases. Not so. The Government also fails to acknowledge that the trial court did not rule on this issue, stating that the regulatory taking test was irrelevant to the court's analysis of the taking claim under Rule 12(b)(6).[41] So, the Government's argument is not only wrong on the law but also premature.

In *Lucas v. South Carolina Coastal Council*,[42] the Supreme Court found a categorical regulatory taking and applied a per se test to a statute that prohibited a property owner from building homes on his residential lots and stated that when a property owner is "called upon to sacrifice all economically beneficial uses in the name of the common good. . . he has suffered a taking."[43] The Court emphasized

---

[40] 2013 Puerto Rico Laws Act 3 (H.B. 888) ("[I]t is necessary to consider new alternatives that would allow for the total restructuring.").

[41] Appx23–25 ("Plaintiffs argue for application of a *per se* regulatory takings test; defendant argues that the more nuanced *Penn Central* test applies. The dispute turns out to be immaterial, however.").

[42] *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).

[43] *Id.* at 1019.

that the economic impact rule it was applying was a per se rule.[44] The elimination

of the property's value[45] was considered by the Court to be "the equivalent of a

physical appropriation."[46] Similarly, the Supreme Court applied a per se taking

analysis in *Hodel v. Irving*[47] when a regulation eliminated the right of some

property owners to devise certain types of property.[48]

In *Whitney Benefits, Inc. v. United States*,[49] the Court held that a statute

prohibiting coal mining on the plaintiff's property was a per se compensable

taking.[50] In *Ruckelshaus v. Monsanto Co.*,[51] the Supreme Court held that the

Government's disclosure of a trade secret formula was a per se taking.

The same per se rule applies in cases specifically involving money. In *Tyler*

*v. Hennepin County*,[52] the Supreme Court found a per se taking under a statute that

allowed the County to retain the excess proceeds from a tax sale rather than paying

---

[44] *Id.* (When a property owner "has been called upon to sacrifice *all economically* beneficial uses in the name of the common good . . . he has suffered a taking.").

[45] *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005).

[46] *Lucas*, 505 U.S. at 1017.

[47] *Hodel v. Irving*, 481 U.S. 704 (1987).

[48] *Id.*

[49] *Whitney Benefits, Inc. v. United States*, 926 F.2d 1169 (Fed. Cir. 1991); *see also Whitney Benefits, Inc. v. United States*, 752 F.2d 1554 (Fed. Cir. 1985).

[50] *Whitney Benefits*, 926 F.2d at 1172.

[51] *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984).

[52] *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 647 ("A taxpayer who loses her $40,000 house to the State to fulfill a $15,000 tax debt has made a far greater contribution to the public fisc than she owed. The taxpayer must render unto Caesar what is Caesar's, but no more.").

them to the property owner. In *Webb's Fabulous Pharmacies, Inc.*,[53] the Supreme

Court held that a statute that authorized a county court to appropriate interest on

interpleader funds deposited with the court was a per se taking analogous to a

physical taking.[54] In *Brown*[55] and *Phillips*,[56] the Supreme Court ruled that a law

requiring lawyers to remit the interest on funds held in their trust accounts to a

charitable organization was a per se taking:

> Because interest earned in IOLTA accounts "is the 'private property' of
> the owner of the principle," [and] the transfer of interest to the
> [charitable legal services organizations] seems more akin to the
> occupation of a rooftop space in *Loretto v. Teleprompter*, which was a
> physical taking subject to per se rules.[57]

The Government's attempt to distinguish *Brown* is not persuasive. As the

Dinh complaint alleges, every COFINA Bondholder had a lien on and a property

interest in the Dedicated Sales Tax Fund, as contemplated by Act 91 and the Bond

Resolutions.[58] Both the statutes that created COFINA and the Bond Resolution set

forth ownership and guaranteed that every Bondholder held a lien proportional to

the amount they were owed:

---

[53] *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980).
[54] *Id.*
[55] *Brown v. Legal Found. of Washington*, 538 U.S. 216 (2003).
[56] *Phillips v. Washington Legal Found.*, 524 U.S. 156 (1998).
[57] *Brown*, 538 U.S. at 217–218 (quoting *Phillips*, 524 U.S. at 172).
[58] *See* Appx72–73 ("The bond covenants gave COFINA bondholders a lien on the
pledged property and other COFINA assets to secure repayment. . . . Under the
terms of the Bond Resolution, these COFINA bonds were repayable solely from
and secured equally and ratably by a security interest in the pledged property.").

COFINA is hereby authorized to pledge and otherwise encumber all or part of such revenues solely for the payment of principal, interest and redemption premium of such bonds and other obligations. . . . The income or revenues thus encumbered, including those subsequently received by COFINA, shall be subject to said lien immediately.[59]

Much like the money in the interpleader fund in *Webb's*,[60] the equitable interest in the homeowner's tax sale in *Tyler*,[61] and the IOLTA accounts in *Brown*[62] and *Phillips*,[63] the money in the Dedicated Sales Tax Fund did not belong to Puerto Rico, the Oversight Board, or Congress; these funds belong to the COFINA Bondholders: "The Resolution creates, in the manner and to the extent provided therein, a continuing pledge of and lien on Pledged Property to secure the full and final payment of the principal of and premium, if any, and interest on, all Bonds issued pursuant to the Resolution."[64]

By authorizing the Oversight Board to transfer COFINA Bondholder funds and pledged revenue to the Puerto Rico general fund, PROMESA destroyed the

---

[59] P.R. Laws Ann. tit. 13, § 13(b); *see also* COFINA Bond Resolution (June 10, 2009) at B-19, https://www.aafaf.pr.gov/wp-content/uploads/ISSUERS/ COFINA/Subordinate-Bonds/2009/Sales-Tax-Revenue-Bonds-First-Subordinate-Series-2009-A.pdf (last visited Jan. 22, 2024).

[60] *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980).

[61] *See Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023).

[62] *See Brown v. Legal Found. of Washington*, 538 U.S. 216 (2003).

[63] *See Phillips v. Washington Legal Found.*, 524 U.S. 156 (1998).

[64] COFINA Bond Resolution (June 10, 2009) at B-19, https://www.aafaf.pr.gov/ wp-content/uploads/ISSUERS/COFINA/Subordinate-Bonds/2009/Sales-Tax-Revenue-Bonds-First-Subordinate-Series-2009-A.pdf (last visited Jan. 22, 2024); *see also* P.R. Laws Ann. tit. 13, §§ 11a-16.

value of COFINA Bondholders' bonds, their interest in the Dedicated Sales Tax Fund, their perfected lien, and their contracts with COFINA[65]—a Fifth Amendment taking for which just compensation is due.

The Government mischaracterizes Dinh's security interest by reducing it to a mere contractual right to payment. But Dinh's security interest was a vested property right under Puerto Rico law[66] that could only be taken by newly enacted federal legislation. Dinh's security interest, as stated in the Bond Resolution, included "the Dedicated Sales Tax Fund, (2) all COFINA Revenues, as defined in the Bond Resolution, (3) all right, title, and interest of COFINA in and to COFINA Revenues. . ., and (4) funds, deposits, accounts, and subaccounts held by the Trustee."[67] PROMESA took Dinh's security interest when it authorized the transfer of the Dedicated Sales Tax Fund to pay Puerto Rico's outstanding debts, diverted COFINA's share of future Sales and Use Tax revenues to Puerto Rico, and destroyed the Bondholders' ability to enforce their lien and take action against COFINA for the failure to repay the bonds.[68]

---

[65] 48 U.S.C. § 2101 (defining bond claim to include secured bonds and liens).
[66] P.R. Laws Ann. tit. 13, § 13(b).
[67] Appx73-74; *see also* Appx72; *see also* COFINA Bond Resolution (June 10, 2009) at B-12, https://www.aafaf.pr.gov/wp-content/uploads/ISSUERS/COFINA/Subordinate-Bonds/2009/Sales-Tax-Revenue-Bonds-First-Subordinate-Series-2009-A.pdf (last visited Jan. 22, 2024).
[68] *Armstrong v. United States*, 364 U.S. 40 (1960).

The Government's reliance on two ERISA cases as "most analogous" to this case, *Connolly v. Pension Benefit Guaranty Corp*[69] and *Concrete Pipe*,[70] is misplaced. Those cases merely stand for the proposition that Congress can change the employer contribution requirements for ongoing qualified pension plans, and such changes will not trigger a regulatory taking (based on the specific facts of those cases; facts not relevant here). These cases do not support the conclusion that Congress can authorize the seizure and transfer of funds securing investment bonds for use by another entity, the Puerto Rico government, with constitutional impunity.

*Eastern Enterprises v. Apfel*[71] is also not instructive here. *Eastern Enterprises* was not a just compensation case under the Tucker Act (like this one), but a suit to enjoin a statute on due process and takings grounds, which resulted in a plurality decision.[72] In addition, although the *Eastern Enterprises* Court did discuss the *Penn Central* test, the invalidation ruling was based on the fact that the statute violated the principle that "[r]etroactivity is generally disfavored in the law."[73] And "unlike the pension withdrawal liability upheld in *Concrete*

---

[69] *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211 (1986).
[70] *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 645 (1993).
[71] *E. Enterprises v. Apfel*, 524 U.S. 498 (1998).
[72] *Id.* (plurality decision).
[73] *Id.* at 532.

*Pipe* and *Connolly,* the Coal Act's scheme for allocation of Combined Fund premiums is not calibrated either to Eastern's past actions or to any agreement—implicit or otherwise—by the company."[74]

**5.      Even If a Multi-Factor Regulatory Taking Analysis Applies (Which it Does Not), COFINA Has Alleged a Compensable Taking**

As it did in the trial court, the Government again argues that the taking here should be analyzed as a multi-factor, regulatory taking under the *Penn Central* standard.[75] But that issue is premature and not before this Court because the trial court did not rule on which taking standard to apply.[76] Because *Penn Central* requires a fact-intensive, ad hoc analysis, courts routinely have found the *Penn Central* analysis premature at the motion to dismiss stage: "[W]hile [the *Penn Central*] factors may ultimately be relevant in deciding whether a taking has occurred, they do not assist the Court in deciding whether Plaintiffs have stated a plausible taking claim."[77]

Emphasizing this point, one Court of Federal Claims judge has cautioned that trying to perform a *Penn Central* analysis at the pleading stage muddies the waters: "Defendant attempts to muddy the issue by injecting a regulatory taking

---

[74] *Id.* at 536.
[75] *See generally Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).
[76] Appx23 ("The dispute turns out to be immaterial, however. Irrespective of which test is applied. . . .").
[77] *Aviation & Gen. Ins. Co., Ltd. v. United States*, 121 Fed. Cl. 357, 366 (2015).

analysis into what should be an assessment of Plaintiffs' pleading—a Rule 12(b)(6) inquiry into whether Plaintiffs have stated a plausible claim for a Fifth Amendment taking."[78]

But even if the Court did decide to address the issue of what test should apply in analyzing Dinh's taking claim, as Dinh explained in his opening brief, whether analyzed as a per se, categorical taking or as a multi-factor regulatory taking, Dinh's complaint sufficiently pleads a compensable *Penn Central* taking.[79]

## 5.1 COFINA Bondholders Held a Reasonable, Investment-Backed Expectation That Their Bonds Would Be Repaid in Full

The investment-backed expectations prong of the *Penn Central* analysis requires an objective and fact-specific inquiry into what, under all the circumstances, the plaintiffs should have anticipated.[80] The Supreme Court has held that a statutory change that violates reasonable investment-backed expectations constitutes a taking without reference to the other *Penn Central* factors.[81] This Court has held that a statute nullifying a contract right to prepay a mortgage is tested against the expectations of the reasonable developer who signed the mortgage: "The critical question is whether a reasonable developer confronted

---

[78] *Alimanestianu v. United States*, 124 Fed. Cl. 126, 133 (2015); *see generally Fredericks v. United States*, 125 Fed. Cl. 404, 421 (2016).

[79] *See* Appx23 ("The dispute turns out to be immaterial, however. Irrespective of which test is applied. . . .").

[80] *Cienega Gardens*, 331 F.3d at 1346.

[81] *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984).

with the particular circumstances facing the Owners would have expected the government to nullify the twentieth-year prepayment right in the mortgage contract and in the regulations."[82]

Dinh, like the developers in *Cienega Gardens*, made their investments with the reasonable expectation that the Act 91 statutory regime, which the Puerto Rico legislature could not change, secured repayment of their COFINA Bonds. That statutory regime included a requirement that a portion of the sales tax be paid into COFINA's Dedicated Sales Tax Fund and held in trust to repay the borrowed principal and interest; a perfected lien on the Dedicated Sales Tax Fund; and a contract prohibition on legislative nullification of these rights by the Government of Puerto Rico.[83]

In addition, Puerto Rico and COFINA, its instrumentality, were excluded from protections afforded by Chapter 9 of the Bankruptcy Code.[84] Dinh made his investments relying on a legal regime that was then altered by the United States—not by Puerto Rico—through the extraordinary provisions of PROMESA, which created a new, replacement legal regime aimed directly at destroying their security funds and rights to repayment of their bonds.

---

[82] *Cienega Gardens*, 331 F.3d at 1346.

[83] Appx72; *see also* P.R. Laws Ann. tit. 13, §§ 11a-16.

[84] 11 U.S.C. § 101(52) ("The term 'State' includes the District of Columbia and Puerto Rico, except for the purpose of defining who may be a debtor under chapter 9 of this title.").

Because PROMESA resulted in a complete abnegation of Dinh's rights under the legal regime that Dinh relied on when investing in COFINA bonds, the reasonable, investment-backed expectations factor alone shows the Government's actions to be a Fifth Amendment taking.[85]

### 5.2 The Complaint Properly Alleges That PROMESA Caused Severe Economic Impact to the COFINA Bondholders

The Second Amended Complaint amply alleges that, as a result of PROMESA, COFINA bonds were reduced to a fraction of their pre-PROMESA value, with lower principal amounts, lower interest rates, and loss of interest during the multi-year pendency of the PROMESA Court proceeding.[86] In addition, PROMESA authorized the transfer of hundreds of millions of dollars that was held as security for repayment of Dinh's principal and interest. This caused a diversion of the COFINA Dedicated Sales Tax Fund and an ongoing diversion of pledged Sales and Use Tax revenues, destroying Dinh's lien on that fund and the pledged revenues.[87]

In short, the Complaint alleges Dinh suffered severe economic impacts as a result of PROMESA, amply satisfying this *Penn Central* consideration.

---

[85] *See Yancey v. United States*, 915 F.2d 1534, 1540 (Fed. Cir. 1990) (finding a taking where "plaintiffs had the investment-backed expectation to sell the hatching eggs to customers outside of Virginia[, and] Defendant's actions in administering [a] quarantine resulted in an unforeseen and disparate impact upon plaintiffs").
[86] *See* Appx81.
[87] Appx81.

### 5.3 The Character of the Government's Action Is the Equivalent of a Physical Seizure

Although the trial court erroneously held that Dinh's complaint did not allege a compensable taking because the taking was not physical, PROMESA's seizure and transfer of the funds dedicated as security for Dinh's bonds is tantamount to a physical taking.

The Supreme Court itself has compared a statute requiring that money be transferred to a third party to the physical invasion of an apartment building.[88] Such a government invasion of property rights gives rise to a taking claim regardless of the size of the property taken.[89] Here, through PROMESA, Congress authorized the seizure and transfer of money in COFINA's Dedicated Sales Tax Fund to pay the debts of Puerto Rico—a per se taking without reference to the other *Penn Central* factors.[90]

Where the Government action destroys an essential stick in the bundle of property rights, the Supreme Court has found a taking without reference to other *Penn Central* factors. In *Hodel v. Irving*,[91] after finding that the economic impact and reasonable expectations factors did not support a Fifth Amendment taking, the

---

[88] *Brown*, 538 U.S. at 217–218, 235.
[89] *See Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); *Kaiser Aetna v. United States*, 444 U.S. 164 (1979).
[90] *See Brown*, 538 U.S. at 217–218, 235.
[91] *Hodel*, 481 U.S. 704.

Court still held that a regulation that virtually abrogated the right to pass on a certain type of property was a taking because "[i]n one form or another, the right to pass on property—to one's family in particular—has been part of the Anglo-American legal system since feudal times."[92] In *Kaiser Aetna v. United States*,[93] the Supreme Court found a taking where the regulation destroyed "one of the most essential sticks in the bundle of rights that are commonly characterized as property—the right to exclude others."[94] In *Louisville Joint Stock Bank*,[95] the Supreme Court struck down a bankruptcy provision that significantly revised the repayment terms of a mortgage.

The two ERISA cases the Government cites, *Connolly v. Pension Benefit Guaranty Corporation*[96] and *Concrete Pipe*,[97] are not to the contrary. They merely stand for the proposition that Congress can change the employer contribution requirements for ongoing qualified pension plans. In contrast, in *Eastern Enterprises* the Supreme Court held that Congress's creation of a new plan, *retroactively* imposing new financial obligations on employers, turns the notion of property rights protection on its head.[98]

---

[92] *Id.*
[93] *Kaiser Aetna v. United States*, 444 U.S. 164 (1979).
[94] *Id.* at 176.
[95] *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935).
[96] *Connolly*, 475 U.S. 211.
[97] *Concrete Pipe and Products of California, Inc.*, 508 U.S. at 645.
[98] *E. Enterprises v. Apfel*, 524 U.S. 498, 538 (1998).

PROMESA destroyed Dinh's ownership of the secured funds for the COFINA Bonds, authorizing the Oversight Board to seize and transfer the funds dedicated to repaying Dinh's bonds to the Puerto Rico general fund. As the Supreme Court has held, the statutory destruction of property rights in deposited funds is a taking:

> The deposited fund was the amount received as the purchase price for Webb's assets. It was the property held only for the ultimate benefit of Webb's creditors, not for the benefit of the court and not for the benefit of the county. . . . Eventually, and inevitably, that fund, less proper charges would have been distributed among the creditors as their claims were recognized by the court. The creditors thus had a state-created property right to their respective portions of the fund.[99]

6.      **The Trial Court Correctly Rejected the Government's Argument That the Court of Federal Claims Lacked Tucker Act Jurisdiction**

As the trial court held, "[t]he subject matter jurisdiction of this court [the CFC] is defined by the Tucker Act, which grants jurisdiction to this court to 'render judgment upon any claim against the United States founded either upon the Constitution, or any act of Congress or any regulation of an executive department.'"[100] And "[h]ere, a money-mandating source undoubtedly exists: the text of the Fifth Amendment mandates just compensation when the government takes private property for public use."[101] "There is, in short, 'no further

---

[99] *Webb's Fabulous Pharmacies*, 449 U.S. at 161.
[100] Appx12 (quoting 28 U.S.C. § 1491(a)(1)).
[101] Appx12 (citing U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation.")).

jurisdictional requirement that the court determine whether the additional

allegations of the complaint state a nonfrivolous claim on the merits.'"[102] The trial

court was correct, and the Government's renewed challenge to jurisdiction over

this Fifth Amendment just compensation case should again be rejected.

Dinh's Complaint alleges a per se legislative taking based on Congress's

enactment of PROMESA, which authorized and specifically targeted the taking of

Dinh's property.[103] As the Court of Federal Claims held in another case alleging a

taking claim based on PROMESA's enactment, *Altair Global Credit Opportunities

Fund (A) v. United States*,[104] the CFC has jurisdiction over this action because

COFINA Bondholders' Complaint identifies a substantive right for money

damages and a substantive law that "can fairly be interpreted as mandating

compensation by the Federal Government."[105] That substantive source is the Fifth

Amendment—not PROMESA, which has no provision for recovering just

compensation against the United States.[106] Contrary to the Government's argument,

---

[102] Appx13 (citing *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008)).

[103] Appx82–83.

[104] *Altair Glob. Credit Opportunities Fund (A), LLC v. United States*, 138 Fed. Cl. 742, 753 (2018).

[105] *Id.* (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)).

[106] *See* Appx16 ("Plaintiffs allege a taking effected by Congress's enactment of PROMESA itself, which is not a claim for which PROMESA provides a scheme of administrative and judicial review"); *see also* Appx14–15 (noting that PROMESA does not itself waive sovereign immunity and does not provide for relief against the United States).

the *Altair* court's jurisdictional decision did not turn on whether the Oversight Board was or was not a federal entity.[107]

Nor did PROMESA displace the CFC's Tucker Act jurisdiction. The Supreme Court has consistently stated that "[i]f there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the Court of Claims to hear and determine."[108] In legislative taking cases like this one, Tucker Act jurisdiction is not withdrawn unless the statute so provides.

> [T]he proper inquiry is not whether the statute 'expresses an affirmative showing of congressional intent to permit recourse to a Tucker Act remedy' but 'whether Congress has in the [statute] withdrawn the Tucker Act grant of jurisdiction to the Court of Claims to hear a suit involving the [statute] founded . . . upon the Constitution.'[109]

To be effective, a statutory withdrawal of Tucker Act jurisdiction must be unambiguous, and the presumption of Tucker Act jurisdiction is considered paramount. A statute withdraws Tucker Act jurisdiction only when it "reflects an unambiguous congressional intent to displace the Tucker Act's waiver of sovereign immunity."[110]

---

[107] *See* Gov't Resp. Br. (Dec. 20, 2023), ECF No. 29 at 26, n.4.
[108] *United States v. Causby*, 328 U.S. 256, 267 (1946).
[109] *Preseault v. I.C.C.*, 494 U.S. 1, 12 (quoting *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 126 (1974)).
[110] *Acceptance Ins. Companies Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007); *accord Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1019 (1984).

PROMESA neither withdraws Tucker Act jurisdiction from the CFC nor vests it in the PROMESA Court. Nothing in PROMESA expresses Congressional intent to withdraw Tucker Act jurisdiction. Nothing in PROMESA even "mention[s] the Tucker Act."[111] Nor does anything in PROMESA's legislative history suggest any such intent.[112]

The Government posits a catch-22 where the CFC cannot hear the case because it lacks jurisdiction, but neither can the PROMESA Title III court. As the Government admits, unlike the Tucker Act, "PROMESA does not waive the Government's sovereign immunity for a claim for just compensation,"[113] so Dinh could not bring this case in the PROMESA Title III court even if he wanted to. As the Government itself states, "[t]he trial court's authority to grant relief against the United States is based on the extent to which the United States has waived sovereign immunity."[114] The Government fails to explain how the PROMESA Court could have jurisdiction over this taking case without a waiver of sovereign immunity.

---

[111] *Cardiosom, L.L.C. v. United States*, 656 F.3d 1322, 1330 (Fed. Cir. 2011).
[112] *See Acceptance Ins. Companies Inc.*, 503 F.3d at 1338; *see also Preseault v. I.C.C.*, 494 U.S. 1, 12 (1990) ("Neither the statute nor its legislative history mentions the Tucker Act.").
[113] Gov't Resp. Br. (Dec. 20, 2023), ECF No. 29 at 29.
[114] *Id.* at 20 (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)).

As the trial court explained, there is no comprehensive scheme in PROMESA under which Dinh could obtain just compensation for an unconstitutional taking. The Court of Federal Claims found that "[g]iven the inadequacy of remedies available in district court for [Dinh's] takings claims," it could "not find in PROMESA unambiguous congressional intent to displace" the Court of Federal Claims' Tucker Act jurisdiction.[115] The trial court also correctly rejected the Government's argument that equitable relief can be an adequate remedy for a taking, quoting the Supreme Court's decision in *Lingle v. Chevron U.S.A., Incorporated*,[116] which states that the Just Compensation Clause is "designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking."[117]

**Conclusion**

This case asks whether Congress can avoid the Fifth Amendment's just compensation guarantee by passing legislation authorizing someone else (here, the Oversight Board) to do the taking. Had Congress directly transferred the funds securing Dinh's bonds to Puerto Rico, there would be no question that Dinh's

---

[115] Appx16.
[116] *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005).
[117] *Id.* at 543.

property rights had been taken for public use. The rule is no different where, as here, Congress authorized someone else to do its dirty work.

Dinh asks this Court to reverse the trial court's dismissal of this case for failure to state a taking claim under RCFC 12(b)(6), to reject the Government's arguments for affirmance and lack of jurisdiction, and to remand the case back to the trial court for disposition of these claims on the merits.

Respectfully submitted,

/s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
MARZULLA LAW, LLC
1150 Connecticut Avenue, NW
Suite 1050
Washington, DC 20036
(202) 822-6760
roger@marzulla.com
January 31, 2024                     nancie@marzulla.com

Counsel for the COFINA Bondholders

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2023-2100

**Short Case Caption:**  Dinh v. US

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes  6,887  words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/31/2024

Signature:  /s/ Roger J. Marzulla

Name:  Roger J. Marzulla