# 2023-2100

## United States Court of Appeals for the Federal Circuit

JOHNATHAN H. DINH, DWIGHT D. JERECZEK, SANDY CHUAN-DINH,

DEBORAH JERECZEK, STAN ELLIOT, RYAN TRAN, THANH NGA TRAN,

WALTER NAHM, LAUREN NAHM, PAMELA PAYSON

                                             Plaintiffs/Appellants

vs.

United States

                                             Defendant/Appellee

_____

On Appeal from the US Court of Federal Claims in *No. 1:22-cv-00725-EGB*

*Honorable Eric G. Bruggink, Senior Judge*

**REQUEST FOR RECONSIDERATION OF DENIAL OF MOTION FOR**

**PERMISSION TO FILE AN AMICUS REPLY BRIEF**

**UNDER FEDERAL RULE 29 (a) (7) OF APPELLATE PROCEDURE**

**IN SUPPORT OF APPELLANTS**

**AND REVERSAL OF DISMISSAL OF CLASS ACTION**

**IN US Court of Federal Claims *No. 1:22-cv-00725-EGB***

## History

On 2/23/2024, this Court denied my Motion to file an Amicus Reply Brief:

> "Arthur Samodovitz filed an amicus brief in this appeal in October 2023. After the United States filed its response brief in December 2023, Mr. Samodovitz now moves to reply. The court denies the motion. Rule 29 of the Federal Rules of Appellate Procedure generally prohibits the filing of reply briefs by amicus curiae. Fed. R. App. P. 29(a)(7) (permitting the filing of an amicus reply brief only by leave of court). The court sees no basis to make an exception here. Mr. Samodovitz suggests that he should be allowed to file a reply brief in lieu of the appellants filing a reply brief, but the appellants have now filed their reply brief. He points to no other circumstances that would overcome the unfairness to the United States's ability to respond to his arguments." Document 34.

## Argument

As to the unfairness issue first, Defendant **expressly consented** to my Reply Brief and did **not** say it was unfair. "We [Defendant] consent to the motion". Document 31. Page 1.

The Court referenced the statement in my Motion, "I was waiting for Appellant's Attorneys to file their Reply Brief before *finalizing* my Amicus Reply Brief, but apparently, they will not file a Reply Brief". I meant only that I wanted

to avoid repetition of what Appellants might say in a Reply Brief. My Amicus Reply Brief countered several, new arguments of Defendant (below), that Appellants' Opening Brief and subsequent Reply Brief did not, so was justified. In these counters to Defendant, my Amicus Reply Brief highlighted the taking and damage that occurred upon enactment of PROMESA by the US. I owned bonds then, and my claim against the US does **not** require a showing that the US controlled the subsequent actions of the FOMB in the Title III.

**1.** Defendant's Answer Brief argued that *enactment* of PROMESA did not result in a taking because PROMESA did not "predetermine …the recovery for bondholders under the plan of adjustment … or even require that Puerto Rico avail itself of the Title III mechanism." Page 38.

Appellants' Reply Brief correctly pointed out on pages 22-24 that abrogation of property rights is a per se taking, for example, **"Where the Government action destroys an essential stick in the bundle of property rights, the Supreme Court has found a taking without reference to other *Penn Central* factors."** Page 22. But in addition, my Amicus Reply Brief explained the profound impact on the bonds due to *enactment* of PROMESA Sections 304 and 206. These sections, not cited in Appellants' Opening Brief or Reply Brief, allowed the FOMB to put the bonds in Title III and keep them there indefinitely, **without cause and at will**, and

not pay principal or interest when due under 11 USC 362, by stating that in its "sole discretion" it made a "good faith offer of consensual restructuring". Therefore, *enactment* of PROMESA abrogated the contract *right* of the bondholders to full payment of principal and interest when due even though PROMESA did not dictate the amount of recovery for bondholders under the plan of adjustment … or even require that Puerto Rico avail itself of the Title III mechanism. Also, the availability and prospect of Title III, without cause and at will of the FOMB and with the obvious motivation for the FOMB (which represents Puerto Rico) to put the bonds into Title III, naturally and substantially reduced the value of the bonds upon *enactment* of PROMESA.

**2.** Defendant's Answer Brief also argued that PROMESA Section 314(b)(3)/48 USC 2174(b)(3) ensured "just compensation" so *enactment* of PROMESA did not cause any damage to the bondholders. Page 37. Neither Appellants' Opening Brief nor Reply Brief challenged this argument, but my Amicus Reply Brief did.

**3.** Defendant's Answer brief also argued that *enactment* of PROMESA was a regulatory taking, not a "per se" taking. Pages 45-60.

Appellants' Opening Brief and Reply Brief challenged this, and correctly argued in its Reply Brief, "*Cedar Point Nursery* [held] that whenever a regulation

4

results in a **physical appropriation** of property (real, personal or intangible), a per se taking has occurred and *Penn Central* has no place." Page 7. However, Appellants did not argue (as did my Amicus Reply Brief) that *Penn Central* is limited to restrictions by zoning or the like, on future use of real property, and does not apply to a contract *right to repayment of a debt* such as a bond, which right was abrogated upon *enactment* of PROMESA.

**4.** Defendant's Answer Brief also argued in support of its *Penn Central* analysis:
> "Finally, plaintiffs' allegation that COFINA's creation and the pledging of the SUT revenues created a reasonable expectation that the revenues would never be subject to competing claims by the Commonwealth is undermined by the official bond statements issued with the securities. For example, the statement issued with the First Subordinate Series 2009A bonds explained that "[t]o the extent that a court determines that the Pledged Sales Tax constitutes 'available resources' for purposes of the Constitutional Debt Priority Provisions, the Pledged Sales Tax may have to be applied to the payment of principal and interest on the Commonwealth's public debt before being used to pay principal of and interest on the Bonds."." Pages 58-59.

Neither Appellants' Opening Brief nor Reply Brief cited the many supportive statements in the Official Statements which dwarfed this one exculpatory statement; my Amicus Reply Brief cited them on pages 20-22.

Because Appellants' Opening Brief and Reply Brief did not respond or sufficiently respond to the foregoing arguments in Defendant's Answer Brief, and these issues materially affect my rights as a Class member and bondholder on the date of enactment of PROMESA, my Amicus Reply Brief should be considered as a right to be fairly "heard".

Respectfully submitted,

/s/ Arthur Samodovitz

Arthur Samodovitz, amicus curiae pro se

P.O. Box 50195, Jacksonville Beach, Fl  32240

904-878-4026

(G)  Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. I am not aware of any type-volume limit for this Request for Reconsideration because Fed. R. App. P. *Rule 32(a)(7)(B)* applies to briefs. Nevertheless, this Request, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

> X☐  this document contains **959 words**, **or**
>
> ☐  this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

> X☐  this document has been prepared in a proportionally spaced typeface using **Microsoft Office 365 in Times New Roman Font Size 14**, or
>
> ☐  this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

/s/Arthur Samodovitz

Arthur Samodovitz, Amicus Curiae   Dated: 02/26/2024